[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO DISMISS (DOCKET ENTRY NO. 105)
The verified complaint alleges the following facts. The plaintiff, J. Doe, M.D., II, is a resident of the Town of Westport and is a physician licensed by the State of Connecticut pursuant to General Statutes 20-B et seq. The complaint alleges that the defendants, state of Connecticut department of public health (department), and Connecticut medical examining board (board), are considering whether to revoke the plaintiff' s medical license.
On or about October 21, 1998, the department received a report that the plaintiff did not maintain sufficient records regarding legally obtained medicinal cocaine. The department's investigation also concerned allegations that the plaintiff had personally abused cocaine. On September 4, 1998, the plaintiff surrendered certain controlled substance registrations to the issuing governmental the State of Connecticut, the State of New York, and the federal government. On or about January 14, 1999, the department initiated a confidential investigation of the plaintiff pursuant to General Statutes § 20-13e.[1]
The complaint alleges that the department is required to schedule a compliance conference pursuant to General Statutes CT Page 9676 § 4-182(c),[2] prior to initiating proceedings against a physician's license. By letter dated March 9, 1999, the department scheduled such a conference with the plaintiff for April 12, 1999. Nevertheless, the complaint alleges that since March 19, 1999, the department has repeatedly "threatened" the plaintiff with the following ultimatum: voluntarily surrender your medical license for an unspecified period of time or face public proceedings to summarily suspend your medical license pursuant to General Statutes § 19a-17(c).[3] The plaintiff alleges that the department has modified the terms of this ultimatum from surrender of the plaintiff's medical license for an indefinite period to the surrender of the license until the resolution of the department's investigation.
The complaint alleges that despite the plaintiff's requests for an opportunity to show fitness to practice medicine, the department has maintained its position with respect to the plaintiff, i.e., that unless the plaintiff signs the consent order, as modified, the department will summarily suspend the plaintiff's medical license.
The complaint further alleges that the department's initiation of public proceedings against the plaintiff would expose the plaintiff to "public ridicule, opprobrious public comments, damage to the plaintiff's professional business reputation, and damage to the plaintiff's business property." Complaint, ¶ 9. Moreover, the complaint alleges that the initiation of the proceedings in the public manner contemplated by the department would violate General Statutes §§ 20-13e
(e), 4-182(c), article first, § 8 of the Connecticut constitution, and the fifth and fourteenth amendments to the United States Constitution. Also, the complaint avers that the institution of public proceedings against the plaintiff in the manner contemplated by the department would violate the Americans with Disabilities Act, 42 U.S.C.A. § 12132 (West 1995), because the plaintiff is a person successfully recovering from a temporary substance abuse problem. The complaint alleges that if the department is not enjoined from initiating public proceedings against the plaintiff, the plaintiff will be irreparably damaged and will no longer have an adequate remedy at law.
Finally, the complaint contends that neither the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166
et seq., nor the Regulations of Connecticut State Agencies, provide a mechanism whereby the plaintiff may obtain immediate CT Page 9677 relief from the department's decision to proceed publicly against the plaintiff. Further, the plaintiff alleges that although an application for a declaratory ruling may be filed pursuant to General Statutes § 4-176[4] and § 19a-9-12 of the Regulations of Connecticut State Agencies,[5] requesting the board to prohibit the department from making public the proceedings regarding the plaintiff's license, would not protect the plaintiff from incurring irreparable harm, as the board is not required to take any action earlier than 60 days following the receipt of such an application. Thus, the complaint alleges that the application of this procedure would defeat the plaintiff's rights as set forth in the verified complaint. The plaintiff seeks, inter alia, an order prohibiting the department and the board from making public any of the proceedings regarding the plaintiff's case, which is currently pending before the department.
On April 26, 1999, the department and the board, respectively, filed motions to dismiss pursuant to Practice Book § 10-30. Pursuant to Practice Book § 10-31(a), both the department and the board filed accompanying memoranda of law in support of their respective motions to dismiss. Pursuant to Practice Book § 10-30(b), the plaintiff filed a memorandum of law in opposition to the defendants' motions to dismiss.
"[A] determination regarding a trial court's subject matter jurisdiction is a question of law. . . . It is well established that [i]n ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." (Citations omitted; internal quotation marks omitted.)Lawrence Brunoli, Inc. v. Town of Branford, 247 Conn. 407, 410,722 A.2d 271 (1999)
The department and the board, respectively, move to dismiss the plaintiff's action. Because both parties make similar arguments in support of their motions to dismiss, the discussion section of this memorandum refers collectively to the department and the board as the defendants.[6]
A. RIPENESS
The defendants first argue that the plaintiff's cause of action must be dismissed because the board has not yet initiated CT Page 9678 proceedings against the plaintiff, and a fortiori, no justiciable controversy exists in the present case. In response, the plaintiff argues that the plaintiff has standing to pursue the relief sought here. Specifically, the plaintiff argues that there is a statutory, constitutional and common law basis for the plaintiff's claim to proceed confidentially and those interests will be harmed by the mere filing of public charges, and therefore, the plaintiff has standing to protect against this potential injury.[7]
"A case that is nonjusticiable must be dismissed for lack of subject matter jurisdiction. . . . Justiciability requires (1) that there be an actual controversy between or among the parties to the dispute . . . (2) that the interests of the parties be adverse . . . (3) that the matter in controversy be capable of being adjudicated by judicial power . . . and (4) that the determination of the controversy will result in practical relief to the complainant." (Citations omitted; internal quotation marks omitted.) Mayer v. Biafore, 245 Conn. 88, 91, 713 A.2d 88 (1998).
The court concludes that the plaintiff's action is not ripe. Here, the plaintiff's complaint does not allege that the board brought an action against the plaintiff. Indeed, the complaint alleges that "On or about January 14, 1999 the department began a confidential investigation of the plaintiff in accordance with C.G.S. § 20-13e and § 20-13e(a), which investigation is identified internally as Petition No. 981028-001-203." Complaint, ¶ 5. Further, the complaint alleges that "the department continued and continues to threaten plaintiff by stating that if plaintiff does not sign the department's proposed Consent Order, as modified, it will move publicly to summarily suspend plaintiff's medical license and thereby avoid the scheduled status conference." Complaint, ¶ 8. The complaint concludes that "If the department is not enjoined from initiating public proceedings against plaintiff in the matter contemplated by the department, plaintiff will be irreparably damaged and will have no adequate remedy at law." Complaint, ¶ 12. In a nutshell, the plaintiff requests this court to enjoin the board from initiating public proceedings against the plaintiff, despite the fact that the agency is unquestionably vested with the authority to do so pursuant to General Statutes §§ 19a-14 and 19a-17. This court, however, is not persuaded by the plaintiff's claim, particularly where the board has not yet initiated official proceedings against the plaintiff, and the plaintiff has made no formal request to the board to proceed on the action anonymously. See, CT Page 9679 e.g., General Statutes § 4-176 and § 19a-9-12 of the Regulations of Connecticut State Agencies.
Indeed, at this stage, the department's investigation is still confidential. See General Statutes § 20-13e(a). Although the proceeding may become public if the department determines that probable cause exists to issue a statement of charges, that is not a sufficient reason for this court to order the department and the board to allow the plaintiff to remain anonymous. If there is a finding that probable cause exists, the proceedings are mandated by statute to become public unless the department "determines that the physician is an appropriate candidate for participation in a rehabilitative program in accordance with subsection (b) [of General Statutes § 20-13e] and the physician agrees to participate in such program in accordance with terms agreed upon by the department and the physician." General Statutes § 20-13e(b). Although the complaint alleges that the plaintiff has undergone treatment for drug abuse, it does not allege that the plaintiff undertook that treatment pursuant to an agreement with the department. Thus, the court finds that it is the department, not this court, that is vested with the power to make this initial determination of whether to proceed confidentially. Of course, if the plaintiff is then aggrieved by such a decision, the plaintiff can appeal pursuant to General Statutes § 4-183(b). Here, however, the board has not taken any official action from which the plaintiff may appeal. Accordingly, the court finds that a justiciable case is not presented here because the board has not yet initiated official proceedings against the plaintiff's medical license.
B. EXHAUSTION OF ADMINISTRATIVE REMEDIES
Alternatively, even if the court were to determine that the action in the present case was ripe, this action would fail because the plaintiff has not exhausted available administrative remedies. In support of their motions to dismiss, the defendants argue that the court lacks subject matter jurisdiction due to the plaintiff's failure to exhaust administrative remedies. In response, the plaintiff argues that going forward under the administrative process would render the plaintiff's asserted right to privacy worthless.
The court agrees with the defendants. "It is a settled principle of administrative law that, if an adequate administrative remedy exists, it must be exhausted before the CT Page 9680 Superior Court will obtain jurisdiction to act in the matter . . . Because the exhaustion doctrine implicates subject matter jurisdiction, we must decide as a threshold matter whether that doctrine requires dismissal of the plaintiff['s] claim . . . [W]henever a court discovers that it has no jurisdiction, it is bound to dismiss the case, without regard to its previous rulings." (Citations omitted; internal quotation marks omitted.)Pet v. Department of Health Services, 207 Conn. 346, 350-51,542 A.2d 672 (1988).
"The doctrine of exhaustion is grounded in a policy of fostering an orderly process of administrative adjudication and judicial review in which a reviewing court will have the benefit of the agency's findings and conclusions. . . . The doctrine of exhaustion furthers the salutary goals of relieving the courts of the burden of deciding questions entrusted to an agency . . . in advance of possible judicial review. . . . Most important, a favorable outcome will render review by the court unnecessary as the United States Supreme Court has noted: A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene." (Citations omitted; internal quotation marks omitted.) Pet v. Department of HealthServices, supra, 207 Conn. 351-52.
Here, the board has not taken any official action against the plaintiff's license. Nor has the plaintiff requested the board to allow the plaintiff to remain anonymous during the proceedings that may be initiated. As previously stated, the department and the board are vested by statute with the power to make these initial determinations regarding the plaintiff's license. See General Statutes §§ 19a-17; 20-13e; and 4-183; see also Drummv. Brown, 245 Conn. 657, 676, 716 A.2d 50 (1998) ("Under our exhaustion of administrative remedies doctrine, a trial court lacks subject matter jurisdiction over an action that seeks a remedy that could be provided through an administrative proceeding, unless and until that remedy has been sought in the administrative forum.")
C. IRREPARABLE HARM
The court also finds that even it were to decide this action on the merits, the plaintiff cannot establish the element of irreparable harm that is necessary in order for the court to grant injunctive relief. "The question of irreparable harm and CT Page 9681 availability of an adequate remedy at law are threshold issues which the court must consider before it can determine whether injunctive relief is warranted. . . . A party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law. . . . These elements are so crucial that a party's failure to allege and prove them is a sufficient ground for sustaining the refusal to grant an injunction, even where a court's conclusions on the merits are erroneous." (Citations omitted; internal quotation marks omitted.) Scinto v. Sosin, 51 Conn. App. 222, 245, 721 A.2d 552, cert. denied, 247 Conn. 963 (1998). The court is not persuaded that the plaintiff in the present case will suffer irreparable harm for which no adequate remedy exists at law.
The court notes the reasoning of the Connecticut Supreme Court in Pet v. Department of Health Services, supra,207 Conn. 373. In that case, as in the present case, a doctor sought injunctive relief to prevent irreparable harm to inter alia, personal and professional reputation. Reversing the trial court's decision granting the injunctive relief sought by the plaintiff in Pet, the court stated: "We do not disagree that the plaintiff's current practice may have been `damaged' by these proceedings. The plaintiff, however, complains in great measure about injuries that are the indirect result of the action itself. The reaction of former and prospective patients, insurance carriers, other physicians and the general public, although unfortunate since only charges have been made, is not of the defendants' doing and yet the defendants are the target of the injunctive orders of the trial court. . . . The administrative framework was not designed for instant resolution despite the foreseeability of physicians suffering temporary problems due to the pendency of serious charges against them." Pet v. Department of Health Services, supra, 207 Conn. 373; see also Doe v. Department of PublicHealth, 52 Conn. App. 513, 521, cert. denied, 249 Conn. 908, ___ A.2d ___ (1999) (rejecting plaintiff doctor's claim that continuing in the administrative forum will damage his professional reputation).
Thus, the court finds that here, too, the mere initiation of public proceedings based on a finding of probable cause or the summary suspension of the plaintiff's medical license followed by a hearing to confirm the suspension, does not expose the plaintiff to irreparable harm. Indeed, the mere initiation of these proceedings, although unfortunate and undoubtedly stigmatizing, does not rise to the level of irreparable harm. In CT Page 9682 short, the plaintiff in the present case has an adequate remedy at law provided by the statutorily prescribed administrative process, which is subject to appellate review should a decision at the administrative level aggrieve the plaintiff.
Accordingly, the defendants' motion to dismiss is granted.
SKOLNICK, J.